**RECORD NO. 15-1227**

# In The
# United States Court Of Appeals
# For The Fourth Circuit

## UNITRIN AUTO AND
## HOME INSURANCE COMPANY,

*Plaintiff – Appellee,*

**v.**

## BONNIE SIARRIS

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE**

_____

**BRIEF OF APPELLANT**

_____

**Theodore B. Smyth**
**CRANFILL, SUMNER & HARTZOG, LLP**
**5420 Wade Park Boulevard**
**P. O. Box 27808**
**Raleigh, NC 27611**
**(919) 828-5100**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____          Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                              YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                              YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?       YES      NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      YES      NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                            YES      NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                        _____
(signature)                                              (date)

- 2 -

**<u>TABLE OF CONTENTS</u>**

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION .................................................................. 1

STATEMENT OF ISSUES ......................................................................... 2

STATEMENT OF THE CASE ..................................................................... 2

    A.   Siarris' Accident and Her Status as a Named Insured in the
Unitrin Policy ..................................................................... 3

    B.   The Unitrin Policy ............................................................ 3

    C.   The Request for Arbitration ............................................. 6

    D.   The Course of this Action ................................................ 7

SUMMARY OF THE ARGUMENTS ......................................................... 9

ARGUMENT ................................................................................................ 11

    STANDARD OF REVIEW ................................................................. 11

    DISCUSSION OF THE ISSUES ....................................................... 11

        A.   Standard of Review for a Motion for Judgment on the
Pleadings Pursuant to Rule 12(c) of the Federal Rule of
Civil Procedure .................................................................. 11

        B.   Choice of Law .................................................................... 13

        C.   North Carolina Rules of Construction of Insurance
Contracts ........................................................................... 14

i

D.    The Arbitration Provision in the Unitrin Policy Provides for the Binding Arbitration of the Issues of Liability and Damages Relating to an Uninsured Motorist, Without Any Policy Requirement that a Separate Lawsuit Also be Filed to Effectuate the Right to Arbitrate ............................................ 16

E.    Both North Carolina and Federal Public Policy Relating to Arbitration Support Arbitration of Siarris' UM Claim Pursuant to this Auto Policy ...................................................... 23

F.    The North Carolina Statute of Limitation for Triggering Arbitration ................................................................................ 28

G.    The North Carolina Cases Construing UM and UIM Arbitration Provisions Support Arbitration in this Instanc ....... 33

CONCLUSION .................................................................................. 39

REQUEST FOR ORAL ARGUMENT ................................................. 40

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Adams v. Nelson*,
    313 N.C. 442, 329 S.E.2d 322 (1985) ...............................................28, 29, 30

*Allstate Ins. Co. v. Shelby Mut. Ins. Co.*,
    269 N.C. 341, 152 S.E.2d 436 (1967) ..........................................................15

*Bendrick v. State Farm Mutual Automobile Insurance Company*,
    2012 WL 1247158, W.D.N.C. (March 7, 2012) ...........................................28

*Burbach Broadcasting Company of Delaware v. Elkins Radio Corp.*,
    278 F.3d 401 (4th Cir. 2002) .........................................................................11

*Cameron v. Griffith*,
    91 N.C. App. 164, 370 S.E.2d 704 (1988) ....................................................30

*Capps v. Virrey*,
    184 N.C. App. 267, 645 S.E.2d 825 (2007) .....................................36, 37, 38

*Carolina Virginia Fashion Exhibitors, Inc. v. Gunter*,
    41 N.C. App. 407, 255 S.E.2d 414 (1979) ....................................................27

*Carter v. Cook*,
    158 N.C. App. 743, 582 S.E.2d 82 (2003) ....................................................29

*Carteret County v. United Contractors of Kinston, Inc.*,
    120 N.C. App. 336, 462 S.E.2d 816 (1995) ..................................................24

*Chew v. Progressive Universal Insurance Company*,
    2010 WL 4338352, E.D.N.C. (October 25, 2010) ........................................28

*Collins & Aikman Corp. v. Harford Accident & Indemnity Company*,
    335 N.C. 91, 436 S.E.2d 243 (1993) ............................................................13

*Crutchley v. Crutchley*,
    306 N.C. 518, 293 S.E.2d 793 (1982) ..........................................................37

iii

*Cyclone Roofing Company, Inc. v. David N. LaFave Co., Inc.*,
    312 N.C. 224, 321 S.E.2d 872 (1984) ....................................................24, 25

*Eckard v. Smith*,
    166 N.C. App. 312, 603 S.E.2d 134 (2004), *aff'd per curiam*,
    360 N.C. 51, 619 S.E.2d 503 (2005) ...........................................................31

*Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) .........................................................................1

*Elliott v. KB Home North Carolina, Inc.*,
    752 S.E.2d 694 (2013), *disc. review denied*,
    367 N.C. 512, 759 S.E.2d 98 (2014), *cert. denied*,
    135 S. Ct. 494 (2014)....................................................................................24

*Fortune Ins. Co. v. Owens*,
    351 N.C. 424, 526 S.E.2d 463 (2000) ...........................................................13

*Glass v. Kidder Peabody & Co., Inc.*,
    114 F.3d 446 (4th Cir. 1997) .........................................................................27

*Government Emp. Ins. Co. v. Keystone Insurance Company*,
    408 F. Supp. 1185 (E.D. Pa. 1975)................................................................26

*Herring v. Liner*,
    163 N.C. App. 534, 594 S.E.2d 117 (2004) ..................................................15

*Housing Authority Risk Retention Group, Inc. v.*
*Chicago Housing Authority*,
    378 F.3d 596 (7th Cir. 2004) ..................................................................11, 12

*J.M. Owen Building Contractors v. College Walk Ltd.*,
    101 N.C. App. 483, 400 S.E.2d 468 (1991) ........................................... 27-28

*Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*,
    266 N.C. 430, 146 S.E.2d 410 (1966) ....................................................14, 19

*Klaxon Company v. Stentor Electrical Manufacturing Company*,
    313 U.S. 487 (1941)......................................................................................13

*Lemons v. Pennsylvania National Mutual Casualty Insurance Company*,
   2011 WL 2565617, M.D.N.C. (June 28, 2011)..............................................28

*Martin v. Continental Insurance Company*,
   123 N.C. App. 650, 474 S.E.2d 146 (1996) ..................................................13

*Masco Corp. v. Zurich American Insurance Company*,
   382 F.3d 624 (6th Cir. 2004) ........................................................................26

*McNeal v. Black*,
   61 N.C. App. 305, 300 S.E.2d 575 (1983) ....................................................27

*Moore v. Hartford Fire Ins. Co.*,
   270 N.C. 532, 155 S.E.2d 128 (1967) ...........................................................14

*Moses H. Cone Hospital v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983).....................................................................................25, 26

*National Fidelity Life Ins. Co. v. Karaganis*,
   811 F.2d 357 (7th Cir. 1987) ........................................................................12

*New South Insurance v. Kidd*,
   114 N.C. App. 749, 443 S.E.2d 85 (1994) ....................................................15

*Newmont U.S.A. Ltd. v. Insurance Company of North America*,
   615 F.3d 1268 (10th Cir. 2010) ....................................................................26

*Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*,
   163 F.3d 449 (7th Cir. 1998) ........................................................................11

*Nucor Corp. v. General Bearing Corp.*,
   333 N.C. 148, 423 S.E.2d 747 (1992) ...........................................................24

*O'Neal Construction, Inc. v. Leonard S. Gibbs Grading, Inc.*,
   121 N.C. App. 577, 468 S.E.2d 248 (1996) ..................................................25

*Pacific Ins. Co. v. American Nat. Fire Ins. Co.*,
   148 F.3d 396 (4th Cir. 1998) ........................................................................12

*Pinnacle Group, Inc. v. Shrader*,
   105 N.C. App. 168, 412 S.E.2d 117 (1992) ..................................................37

v

*Prescott Architects, Inc. v. Lexington Insurance Company*,
    638 F. Supp. 2d 1317 (N.D. Fla. 2009) .......................................26

*Register v. White*,
    358 N.C. 691, 599 S.E.2d 549 (2004) .......................22, 34, 35, 36

*Rodgers Builders, Inc. v. McQueen*,
    76 N.C. App. 16, 331 S.E.2d 726 (1985) ..............................24, 25

*Sellers v. M.C. Floor Crafters, Inc.*,
    842 F.2d 639 (2d Cir. 1988) ...................................................12

*Sins v. Clarendon Nat. Ins. Co.*,
    336 F. Supp. 2d 1311 (S.D. Fla. 2004) .......................................26

*Smith v. Young Moving & Storage, Inc.*,
    141 N.C. App. 469, 540 S.E.2d 383 (2000), *aff'd per curiam*,
    353 N.C. 521, 546 S.E.2d 87 (2001) .........................................25

*State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*,
    318 N.C. 534, 350 S.E.2d 66 (1986) .........................................14

*Sturdivant v. Andrews*,
    161 N.C. App. 177, 587 S.E.2d 510 (2003), *disc. review denied*,
    358 N.C. 242, 594 S.E.2d 34 (2004) .........................................31

*Thomas v. Howard*,
    51 N.C. App. 350, 276 S.E.2d 743 (1981) .................................27

*Thomas v. Washington*,
    136 N.C. App. 750, 525 S.E.2d 839 (2000) ...............................31

*Volt Information Sciences, Inc. v.*
*Board of Trustees of Leland Stanford, Jr. University*,
    489 U.S. 468 (1989)............................................................ 26-27

*Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*,
    276 N.C. 348, 172 S.E.2d 518 (1970) ..................................14, 15

*Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*,
    315 N.C. 688, 340 S.E.2d 374 (1986) .......................................14

*Williams v. Nationwide Mutual Insurance Company*,
   269 N.C. 235, 152 S.E.2d 102 (1967) ...........................................34

*WMS, Inc. v. Weaver*,
   166 N.C. App. 352, 602 S.E.2d 706, *disc. review denied*,
   359 N.C. 197, 608 S.E.2d 330 (2004) .........................................37

*Wright v. Fidelity & Cas. Co. of New York*,
   270 N.C. 577, 155 S.E.2d 100 (1967) ....................................33, 34

**Statutes:**

9 U.S.C.A. § 2 ...................................................................26, 27

28 U.S.C. § 1295(a) ................................................................2

28 U.S.C. § 1332 ...................................................................1

28 U.S.C. § 2201, *et seq.* ........................................................1

N.C. Gen. Stat. § 1-52 .............................................................29

N.C. Gen. Stat. § 1-52(1) ..........................................................32

N.C. Gen. Stat. § 1-52(16) .............................................9, 19, 31, 32

N.C. Gen. Stat. § 1-54 .............................................................31

N.C. Gen. Stat. § 1-567.2 (Supp. 1998)..............................................36

N.C. Gen. Stat. § 1-569.1, *et seq.*....................................23, 28, 38

N.C. Gen. Stat. § 1-569.1(3) .......................................................23

N.C. Gen. Stat. § 1-569.3 ..........................................................36

N.C. Gen. Stat. § 1-569.5 ..........................................................23

N.C. Gen. Stat. § 1-569.5(b) .......................................................23

N.C. Gen. Stat. § 1-569.6 ..........................................................29

N.C. Gen. Stat. § 1-569.7(e) ...............................................................23

N.C. Gen. Stat. § 1-569.9 ...................................................................29

N.C. Gen. Stat. § 1-569.10 .................................................................29

N.C. Gen. Stat. § 1-569.27 .................................................................23

N.C. Gen. Stat. § 58-3-1 ....................................................................13

**Rules:**

Fed. R. App. P. 34(a)(1) .....................................................................40

Fed. R. App. P. 34(a)(2)(A) ................................................................40

Fed. R. App. P. 34(a)(2)(B) ................................................................40

Fed. R. App. P. 34(a)(2)(C) ................................................................40

Fed. R. Civ. P. 12(c)................................................................1, 8, 11, 12

Fed. R. Civ. P. 57 ................................................................................1

**Other Authority:**

Joel D. Smith, Annotation, Statutes of Limitations as Bar to Arbitration Under
    Agreement, 94 A.L.R.3d 533 (1979)...........................................32

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

This is a declaratory judgment action pursuant to 28 U.S.C. § 2201, *et sequa*, and Rule 57 of the Federal Rules of Civil Procedure. Both the Complaint, filed by Unitrin Auto & Home Insurance Company ("Unitrin"), and the Counterclaim, filed by the insured, Bonnie Siarris ("Siarris"), seek a construction of the contractual right to arbitrate a hit-and-run uninsured motorist claim pursuant to Policy No. RC981128 for an auto accident that occurred on October 4, 2010 in North Carolina. (JA 7-8; 145-148). Jurisdiction of the Trial Court was based on undisputed diversity of the parties pursuant to 28 U.S.C. § 1332, and an amount in controversy alleged to be in excess of $75,000. (Complaint, ¶¶ 14-15, Docket No. 1 at p. 2 of 4; JA 6; Answer, Docket No. 3 at p. 2 of 8; JA 144).

After pleadings were completed, on May 21, 2014, Siarris moved for a judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and Unitrin followed suit on June 5, 2014 with its own Rule 12(c) motion. (Siarris Rule 12(c) Motion, Docket No. 12; JA 161; Unitrin Rule 12(c) Motion, Docket No. 14; JA 168). The Court entered an Order on February 3, 2015 granting Unitrin's motion and denying Siarris' motion, declaring that Siarris would be barred from arbitrating her uninsured motorist claim for this accident. (Order, Docket No. 20; JA 170).

1

The declaratory judgment ruling filed on February 3, 2015 was a final Order denying Siarris' motion for judgment on the pleadings, and granting Unitrin's motion for judgment on the pleadings.  (Order, Docket No. 20; JA 178).  A judgment was entered on this ruling on the same date.  (Docket No. 21; JA 179).  A Notice of Appeal was filed by Siarris on March 3, 2015.  (JA 180).  Jurisdiction resides with this Court pursuant to 28 U.S.C. § 1295(a), as this is an appeal from the final decision of a district court of the United States.

## STATEMENT OF ISSUES

1.      Whether the Trial Court erred in denying Siarris' motion for judgment on the pleadings and granting Unitrin's motion for judgment on the pleadings, declaring that upon a proper demand for arbitration of an uninsured motorist claim within the applicable tort statute of limitations, Siarris' automobile insurance policy nevertheless does not allow her to participate in binding arbitration unless Siarris also filed a tort action in the same time period.

## STATEMENT OF THE CASE

There does not appear to be any dispute as to the pertinent facts based on the allegations in the Complaint, the allegations in the Counterclaim, and the responses thereto.

**A.** **Siarris' Accident and Her Status as a Named Insured in the Unitrin Policy**

On October 4, 2010, Siarris, was involved in an automobile accident while driving her vehicle west on Tyvola Road near the intersection with South Boulevard in Charlotte, North Carolina.  (Complaint, Docket No. 1 at ¶ 9; JA 6).  Siarris was struck from the rear by an unknown driver.  (*Id*. at ¶ 10; JA 6).  The unknown driver fled the scene of the accident and his/her identity has not been determined.  (*Id.* at ¶ 11; JA 6).  Siarris alleges that the accident caused her bodily injury.  (*Id*. at ¶ 13; JA 6).  At the time of the accident, Siarris was insured through a policy of personal automobile liability insurance issued through Unitrin.  (*Id*. at ¶ 4; JA 5).  The policy was issued to Siarris, a resident of Gastonia, North Carolina.  (*Id*. at ¶¶ 3, 4 and Exhibit A; JA 5, 13).  The policy provided uninsured motorist coverage on the vehicle.  (*Id.* at ¶ 7; JA 6).  The unknown driver is considered an uninsured motorist under the policy.  (*Id.* at ¶ 12; JA 6).  There is a justiciable controversy between Unitrin and Siarris.  (*Id.* at ¶ 22; JA 7).  Siarris admits each of these facts in her Answer.  (Docket No. 3 at ¶¶ 3, 4, 7, 9, 10, 11, 12, 13 and 22; JA 143-144).

**B.** **The Unitrin Policy**

The policy insuring agreement for uninsured motorist coverage provides in pertinent part:

INSURING AGREEMENT

We will pay compensatory damages which <u>an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle</u> because of:

    1.        bodily injury sustained by an insured and caused by an accident;…

(Policy, Docket No. 1-1 at p. 92 of 132; JA 100) (emphasis added).

       Siarris' policy has a provision for the arbitration of uninsured motorist claims.

The policy's ARBITRATION provision, as modified by an attached endorsement, reads as follows:

ARBITRATION

If we and an **insured** do not agree:

    1.        <u>Whether that **insured** is legally entitled to recover compensatory damages from the owner or operator of an **uninsured motor vehicle**</u> or **underinsured motor vehicle**; or

    2.        As to <u>the amount of such compensatory damages</u>;

<u>then the **insured** may demand to settle these disputed issues by arbitration.</u>  (emphasis added)

For purposes of an:

    1.        Uninsured Motorists Coverage claim, if an **insured** files a lawsuit against us or an owner or operator of an **uninsured motor vehicle** seeking damages that are the subject of the claim for Uninsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if such lawsuit is filed within the time limit required by the laws of the state where the accident occurred for filing a lawsuit against the owner or operator of the **uninsured motor vehicle** for the damages arising out of the accident and only if the **insured** gives us a written demand for arbitration within thirty (30) days after the filing of such lawsuit.

2.     Underinsured Motorists Coverage claim, if an **insured** files a lawsuit against an owner or operator of an **underinsured motor vehicle** seeking damages that are the subject of the claim for Underinsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if the **insured** gives us a written demand for arbitration within thirty (30) days after the later of:

    a.     The date we advance payment to the **insured** in an amount equal to a tentative settlement between the **insured** and the owner or operator of the **underinsured motor vehicle**;

    b.     The date any applicable liability bonds or policies have been exhausted by payments of judgments or settlements; or

    c.     The date the **insured** files a lawsuit against an owner or operator of an **underinsured motor vehicle** seeking damages that are the subject of the claim for Underinsured Motorists Coverage under this policy, provided that such lawsuit is filed within the time limit required by the laws of the state where the accident occurred for filing a lawsuit against the owner or operator of the **underinsured motor vehicle** for the damages arising out of the accident.

The following procedure will be used:

1.     Each party will select a competent arbitrator. The two so selected will select a third.

2.     If the third arbitrator is not selected within 30 days, the **insured** or we may request a judge of a court of record to name one. The court must be in the county and state in which arbitration is pending.

3.     Each party will pay its chosen arbitrator. Each will pay half of all other expenses of arbitration. Fees to lawyers and expert witnesses are not considered arbitration expenses and are to be paid by the party hiring these persons.

5

4.    Unless the **insured** and we agree otherwise, arbitration will take place in the county and state in which the **insured** lives. Arbitration will be subject to the usual rules of procedure and evidence in such county and state. The arbitrators will resolve the issues. A written decision on which two arbitrators agree will be binding on the **insured** and us.

5.    [After deletion of former 5. by amending endorsement] Judgment upon award may be entered in any proper court.

6.    As an alternative, the **insured** and we may agree to arbitrate by rules other than stated above.

(Policy, Docket No. 1-1 at p. 96 of 132; JA 104; as amended by Endorsement, Docket No. 1-1 at pp. 114-115 of 132; JA 123-124) (emphasis added). Siarris admits this is the true and accurate policy. (Answer, Docket No. 3 at ¶ 4; JA 143).

## C.    <u>The Request for Arbitration</u>

By way of the pleadings, including Siarris' Counterclaim and Unitrin's Answer thereto, there is no dispute about the request to arbitrate. On September 26, 2013, Siarris' counsel mailed a letter to Unitrin wherein she designated her chosen arbitrator for the claim. (Answer to Counterclaim, Docket No. 8 at ¶ 29; JA 157; Complaint, Docket No. 1 at ¶ 17; JA 7; Docket No. 1-2; JA 141-142). The letter was addressed to Unitrin in care of the President of Unitrin. (*Id.*). A copy of that letter is attached to the Complaint as Exhibit B. (*Id.*). It was sent to Unitrin by certified mail. (Answer to Counterclaim, Docket No. 8 at ¶ 29 and Exhibit B; Docket No. 1-2; JA 141-142). Unitrin admits that the letter was received on September 30, 2013. (Answer to Counterclaim, Docket No. 8 at ¶ 29; JA 157). Unitrin further

6

admits that a fax cover sheet and a faxed copy of the letter were sent to Fred Shelby, an insurance adjuster assigned to work on this uninsured motorist claim by Unitrin. (Answer to Counterclaim, Docket No. 8 at ¶ 30; JA 157-158). Unitrin further admits that the fax cover sheet and faxed copy of the letter were actually received by Fred Shelby on September 26, 2013. (*Id.*; JA 158). It is further admitted by Unitrin that Fred Shelby also received a mailed copy of the letter. (*Id.* at ¶ 31; JA 158). In regard to this chronology of events, the Trial Court found that Siarris demanded arbitration from Unitrin prior to the expiration of the statute of limitation. (Order, Docket No. 20 at p. 5 of 9; JA 174).

**D.**     **The Course of this Action**

This is a declaratory judgment action to determine the rights and obligations of the parties relating to Siarris' North Carolina personal auto policy issued by Unitrin that provides uninsured motorist coverage against unknown tortfeasors who flee the scene of an accident. (JA 5; 145). This accident occurred on October 4, 2010 in North Carolina and involved an unknown tortfeasor who fled the scene of the accident. (JA 6; 133-134). The named insured owner of the Unitrin policy, Siarris, alleges bodily injuries resulting from the accident. (JA 6; 143-144). Siarris' attorney opted for arbitration pursuant to the Unitrin policy's ARBITRATION provision. (JA 7; 144-146; 152-153; 157-158). Siarris' attorney did this prior to the running of the applicable underlying tort statute of limitation of three (3) years from

the date of the accident.  (JA 144-146; 152-153; 157-158).  Thereafter, Unitrin took

the position that because its insured, Siarris, did not file a tort action in addition to

opting for arbitration pursuant to the policy, as a matter of law there could be no

recovery pursuant to the policy for this uninsured motorist claim.  (JA 7-8).  Based

on this disagreement, triggering a justiciable controversy, Unitrin filed this

declaratory judgment action.  (JA 5; 7).  On May 21, 2014, Siarris moved for a

judgment on the pleadings for a declaration that the following two issues should be

resolved by arbitration binding on Unitrin, pursuant to the ARBITRATION

provision in the Unitrin policy.  (JA 161).  These contracted for arbitrable issues are:

1.    Whether that **insured** is legally entitled to recover compensatory
      damages from the owner or operator of an **uninsured motor
      vehicle** or **underinsured motor vehicle**; or

2.    As to the amount of such compensatory damages;

(Siarris Rule 12(c) Motion, Docket No. 12; JA 161 – Policy, Docket No. 1-1 at p.

114 of 132; JA 122).  These arbitrable issues precisely match the triggering language

in the insuring agreement for uninsured motorist (UM) coverage, which is that

Unitrin "will pay compensatory damages which an insured is legally entitled to

recover from the owner or operator of an uninsured motor vehicle because of :

…bodily injury sustained by an insured and caused by an accident…."  (Policy,

Docket No. 1-1 at p. 92 of 132; JA 100).  Siarris contended that the contractual

liability of Unitrin should be determined through the binding arbitration process set

forth in the policy, based on answers by the arbitrators to these two issues. (JA 161-166). Siarris contends that in the absence of a provision in the policy contract specifically stating the time limit for triggering binding arbitration, the time limit for triggering binding arbitration is the statute of limitation for the underlying claim. Here, the three-year negligence statute of limitation is N.C. Gen. Stat. § 1-52(16).

On June 5, 2014, Unitrin moved for a cross-motion for judgment on the pleadings, contending that triggering arbitration pursuant to the policy is not sufficient to trigger liability through the policy, and that a separate tort action would also need to be brought within the statute of limitations to effectuate Siarris' rights pursuant to the policy. (JA 168).

Neither party asserted any disputed questions of material fact. By way of an Opinion filed on February 3, 2015, the Trial Court denied Siarris' motion for judgment on the pleadings, granted Unitrin's motion for judgment on the pleadings, and entered a final declaratory judgment accordingly in favor of Unitrin. (JA 170). Siarris appealed from this ruling on March 3, 2015. (JA 180). Unitrin has not cross-appealed.

## SUMMARY OF THE ARGUMENTS

Siarris has a policy of automobile insurance that contains an arbitration provision relating to uninsured motorist coverage. Her vehicle was struck by a hit-and-run driver who is defined to be an uninsured motorist pursuant to the policy. This occurred on October 4, 2010. Siarris, through counsel, triggered the right to

9

arbitrate prior to the three-year period set forth in North Carolina for the statute of limitations for an automobile negligence claim. Siarris contends that because she triggered arbitration prior to the running of the three-year statute of limitations, the following issues should be fully resolved by arbitration: whether she is legally entitled to recover compensatory damages from the owner or driver of an uninsured motor vehicle, and the amount of such damages. These are the very contractual requirements contained in the uninsured motorist section of the insuring agreement to trigger payment of uninsured motorist benefits to an insured for bodily injury. Siarris contends that the policy gives her the right to resolve these issues in a binding fashion through arbitration, so long as she timely triggers this request for arbitration pursuant to the policy terms, and she has done this in this case.

The position argued by Unitrin and adopted by the Trial Court was that she could not exercise this right to arbitrate unless she also filed a tort action. The Trial Court specifically found that "[t]he fact that Siarris demanded arbitration prior to the expiration of the statute of limitations does not change this outcome [that she is barred from recovery] because demanding arbitration did not toll the statute or otherwise preserve her rights against the unknown driver." (Order, Docket No. 20 at p. 5 of 9; JA 174).

The parties do not agree on whether Siarris has the right to resolve her hit-and-run uninsured motorist claim by way of binding arbitration with Unitrin for the accident of October 4, 2010, pursuant to the ARBITRATION provision of Unitrin's policy, when arbitration was opted for and requested prior to the running of the applicable statute of limitation.

## ARGUMENT

### STANDARD OF REVIEW

The rulings on appeal involve the denial of the motion for judgment on the pleadings of Siarris and the grant of the motion for judgment on the pleadings of Unitrin. On appeal, the District Court's Rule 12(c) rulings are reviewed *de novo*. *Burbach Broadcasting Company of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).

### DISCUSSION OF THE ISSUES

**A.    Standard of Review for a Motion for Judgment on the Pleadings Pursuant to Rule 12(c) of the Federal Rule of Civil Procedure**

In a motion for judgment on the pleadings, the Court considers the pleadings alone, which consist of the Complaint, the Answer, and any written instruments attached as exhibits. *See, Housing Authority Risk Retention Group, Inc. v. Chicago Housing Authority*, 378 F.3d 596, 600 (7th Cir. 2004); *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

11

A judgment on the pleadings is appropriate where the material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings. *See, Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 641 (2d Cir. 1988); *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

A Rule 12(c) order has been appropriately used in declaratory judgment actions involving the construction of insurance policy language or provisions. *See*, *e.g.*, *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396 (4th Cir. 1998) (upholding Rule 12(c) judgment declaring rights between two insurers over disputed meaning of an employer's liability exclusion); *Housing Authority Risk Retention Group, Inc. v. Chicago Housing Authority*, 378 F.3d 596, 600 (7th Cir. 2004) (construction of pollution exclusion).

In the instant case, no facts are in dispute about the policy language contained in this policy, or as to the timing and method of the request for arbitration as admitted in Answer to Plaintiff's Complaint for declaratory relief (Docket No. 3; JA 143), and in the Reply of the Plaintiff to the Defendant's Counterclaim for declaratory relief (Docket No. 8; JA 157), and as found by the Trial Court in the Order of February 3, 2015.  (Docket No. 20, p. 1 of 9; JA 170).  The legal question that is presented is whether Siarris was required, in addition to timely requesting arbitration, also to file a lawsuit arising out of the auto accident within the same timeframe.

12

**B.** **Choice of Law**

In cases involving jurisdiction through diversity of citizenship, the Federal Courts apply the choice of law rules of the forum State. *Klaxon Company v. Stentor Electrical Manufacturing Company*, 313 U.S. 487, 496 (1941).

N.C. Gen. Stat. § 58-3-1 provides that "all contracts of insurance on property, lives, or interest in this State shall be deemed to be made therein, and all contracts of insurance, the application for which are taken within the State shall be deemed to have been made within this State and are subject to the laws thereof." The North Carolina Courts have looked to the State where the policy was delivered and also as to substantial connections to this State, in determining the law to be applied. *See*, *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) (applying principle of *lex loci contractus* and holding that State where contract was bound and policy was delivered controls choice of holding and of substantive law); *Collins & Aikman Corp. v. Harford Accident & Indemnity Company*, 335 N.C. 91, 94, 436 S.E.2d 243, 245 (1993) (applying North Carolina law to the construction of an umbrella policy issued to an out-of-state corporate insured with a substantial North Carolina presence and with a North Carolina accident); *Martin v. Continental Insurance Company*, 123 N.C. App. 650, 656, 474 S.E.2d 146, 149 (1996) (applying North Carolina requirements to a commercial auto policy where North Carolina had a "connection with the interest insured").

13

In this action, Siarris is a citizen and resident of Gastonia, North Carolina, and the personal auto policy was issued to her in this State, insuring her vehicles. (Complaint, Docket No. 1, ¶¶ 3-4; JA 5 - and Policy, Docket No. 1-1 at p. 5 of 132; JA 13). The vehicles are owned by Siarris and garaged in North Carolina, and the auto accident that is the subject of this contractual dispute occurred in North Carolina as well. (Policy, Docket No. 1-1 at p. 8 of 132; JA 16 and Complaint, Docket No. 1 at ¶ 9; JA 6). The Court below found North Carolina's insurance law applied to the construction of this policy, and there does not appear to be any disagreement from the parties. (Order, Docket No. 20, p. 4 of 9; JA 173).

**C.**    <u>**North Carolina Rules of Construction of Insurance Contracts**</u>

North Carolina has a well-established body of law on the rules of construction for insurance policies governed by North Carolina law. Provisions extending coverage, when reasonable, are construed liberally in favor of coverage. *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986); *Moore v. Hartford Fire Ins. Co.*, 270 N.C. 532, 535, 155 S.E.2d 128, 130 (1967); *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 266 N.C. 430, 435, 146 S.E.2d 410, 414 (1966). "Any doubt as to coverage is to be resolved in favor of the insured." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 693, 340 S.E.2d 374, 378 (1986). *See also*, *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970).

14

"Subject to these principles of construction, exclusions from, conditions upon and limitations of undertakings by the company, otherwise contained in the policy, are to be construed strictly so as to provide the coverage which would otherwise be afforded by the policy." *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 355, 172 S.E.2d 518, 523 (1970); *See also*, *Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 269 N.C. 341, 346, 152 S.E.2d 436, 440 (1967).

Under North Carolina law, the insurer, as drafter of the policy, must clearly state any conditions, exclusions or other coverage limitations. *See*, *e.g.*, *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 355, 172 S.E.2d 518, 523 (1970); *Allstate Ins. Co. v. Shelby Mut. Ins. Co.*, 269 N.C. 341, 346, 152 S.E.2d 436, 440 (1967) ("The words used in the policy having been selected by the insurance company, any ambiguity or uncertainty as to their meaning must be resolved in favor of the policyholder, or the beneficiary, and against the company."). All limitations in coverage such as exclusions must be clearly expressed or the terms of the policy will be construed in favor of coverage. *See*, *Herring v. Liner*, 163 N.C. App. 534, 538, 594 S.E.2d 117, 120 (2004); *New South Insurance v. Kidd*, 114 N.C. App. 749, 753-55, 443 S.E.2d 85, 88 (1994).

**D.** **The Arbitration Provision in the Unitrin Policy Provides for the Binding Arbitration of the Issues of Liability and Damages Relating to an Uninsured Motorist, Without Any Policy Requirement that a Separate Lawsuit Also be Filed to Effectuate the Right to Arbitrate**

The Unitrin policy provides "Combined Uninsured/Underinsured Motorists Coverage" (Policy, Docket No. 1-1, p. 8 of 132; JA 16) with an amended ARBITRATION provision as follows:

ARBITRATION

If we and an **insured** do not agree:

1.       Whether that **insured** is legally entitled to recover compensatory damages from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**; or

2.       As to the amount of such compensatory damages;

then the **insured** may demand to settle these disputed issues by arbitration.

For purposes of an:

1.       Uninsured Motorists Coverage claim, if an **insured** files a lawsuit against us or an owner or operator of an **uninsured motor vehicle** seeking damages that are the subject of the claim for Uninsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if such lawsuit is filed within the time limit required by the laws of the state where the accident occurred for filing a lawsuit against the owner or operator of the **uninsured motor vehicle** for the damages arising out of the accident and only if the **insured** gives us a written demand for arbitration within thirty (30) days after the filing of such lawsuit.

16

2.     Underinsured Motorists Coverage claim, if an **insured** files a lawsuit against an owner or operator of an **underinsured motor vehicle** seeking damages that are the subject of the claim for Underinsured Motorists Coverage under this policy, the **insured** shall have the right to demand arbitration only if the **insured** gives us a written demand for arbitration within thirty (30) days after the later of:

    a.     The date we advance payment to the **insured** in an amount equal to a tentative settlement between the **insured** and the owner or operator of the **underinsured motor vehicle**;

    b.     The date any applicable liability bonds or policies have been exhausted by payments of judgments or settlements; or

    c.     The date the **insured** files a lawsuit against an owner or operator of an **underinsured motor vehicle** seeking damages that are the subject of the claim for Underinsured Motorists Coverage under this policy, provided that such lawsuit is filed within the time limit required by the laws of the state where the accident occurred for filing a lawsuit against the owner or operator of the **underinsured motor vehicle** for the damages arising out of the accident.

The following procedure will be used:

1.     Each party will select a competent arbitrator.  The two so selected will select a third.

2.     If the third arbitrator is not selected within 30 days, the **insured** or we may request a judge of a court of record to name one.  The court must be in the county and state in which arbitration is pending.

3.     Each party will pay its chosen arbitrator.  Each will pay half of all other expenses of arbitration.  Fees to lawyers and expert witnesses are not considered arbitration expenses and are to be paid by the party hiring these persons.

17

4.     Unless the **insured** and we agree otherwise, arbitration will take place in the county and state in which the **insured** lives. Arbitration will be subject to the usual rules of procedure and evidence in such county and state.  The arbitrators will resolve the issues.  A written decision on which two arbitrators agree will be binding on the **insured** and us.

5.     [after deletion of former 5. by amending endorsement] Judgment upon award may be entered in any proper court.

6.     As an alternative, the **insured** and we may agree to arbitrate by rules other than stated above.

(Policy, Docket No. 1-1 at p. 96 of 132; JA 104); as amended by Endorsement

(Policy, Docket No. 1-1 at pp. 114 and 115 of 132; JA 123-124).

This provision expressly and without ambiguity intends to allow an insured to "settle these disputed issues by arbitration".  (Policy, Docket No. 1-1 at p. 114 of 132; JA 122).  The two issues are "whether that insured is legally entitled to recover compensatory damages from the owner or operator of an uninsured motor vehicle" and "as to the amount of such compensatory damages". (emphasis added) (*Id*.). [1]

The insuring agreement for uninsured motorist coverage provides almost identical tracking language.  In pertinent part it provides that the insurer "will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:  1. Bodily injury

---

[1] The policy does not provide for the arbitration of coverage disputes, and Siarris does not contest that such an issue is for the Court.  Siarris has filed a Counterclaim seeking a declaration of Siarris' contractual right to arbitrate.  (See Answer and Counterclaim; Docket No. 3; JA 143).

sustained by an insured and caused by an accident;" (emphasis added) (Policy, Docket No. 1-1 at p. 92 of 132; JA 100).  The ARBITRATION provision clearly, by its express terms in tracking that exact language, intended to allow these very issues in the insuring agreement to be arbitrated.  The policy provides for direct arbitration of the issues of whether the insured is "legally entitled to recover" from an uninsured motorist, and the amount of the compensatory damages.  This arbitration option is afforded by Unitrin's contract, it is free from ambiguity, and it should be construed according to its terms.  *See*, *Jamestown Mutual Insurance Co. v. Nationwide Mutual Insurance Co.*, 266 N.C. 430, 435, 146 S.E.2d 410, 414 (1966).

It is not disputed in the record that Siarris, through her attorney, has made a demand to settle these two issues by arbitration, and that this was achieved in writing prior to the running of the applicable statute of limitations.[2]  The Trial Court found that "Siarris demanded arbitration prior to the expiration of the statute of limitations", but concluded that this did not allow her to arbitrate in the absence of

---

[2] Since the North Carolina statute of limitations for negligence for an automobile accident is three years (*See*, N.C. Gen. Stat. § 1-52(16)), and the automobile accident occurred on October 4, 2010, a request for arbitration would need to have been made by October 4, 2013.  The policy does not state how the notice of arbitration should be made or sent, except that "[e]ach party will select a competent arbitrator." (Policy, Docket No. 1-1 at p. 96 of 132; JA 104).  Here, Siarris, through counsel, sent this request by certified mail to the corporate President of Unitrin, and by fax and U.S. Mail to the adjuster assigned to the claim.  The notice referenced Unitrin's claim number and the date of the accident.  The Trial Court found that Siarris demanded arbitration prior to the expiration of the statute of limitation.  (*See* discussion *supra* at pp. 6-7)

preserving her rights against the unknown driver.  (Order, Docket No. 20 at p. 5 of 9; JA 174).

The ARBITRATION provision in general terms seems to be divided into three building block sections, each addressing an aspect of the arbitration.  The first section grants the right to arbitrate and specifically describes the two issues that are eligible for arbitration.  The grant of the right to arbitration does not mandate that a lawsuit be filed within the statute of limitations to trigger such a right.  It states in pertinent part, "if we and an insured do not agree … [as to the resolution of the two issues for which arbitration is provided], then the insured may demand to settle these disputed issues by arbitration."  (Policy, Docket No. 1-1 at p. 114 of 132; JA 122).

Further down in the ARBITRATION provision of the policy, there are two paragraphs which seem to indicate that one can file a lawsuit seeking uninsured motorist benefits (¶ 1; JA 122) or underinsured motorist benefits (¶ 2; JA 122-123), but "if" one files such a lawsuit, the insured waives the right to arbitrate if the insured does not opt for arbitration within thirty (30) days of filing (for an uninsured motorist claim), or within thirty (30) days of the occurrence of other events necessary for an underinsured motorist claim.  (Policy, Docket No. 1-1 at pp. 114-115 of 132; JA 122-123).

The ARBITRATION provision addresses timing issues for requesting arbitration of an uninsured motorist claim and for an underinsured motorist claim only in the circumstance "<u>if</u> an insured files a lawsuit against the insurer or an owner or operator of an uninsured vehicle or an owner or operator of an underinsured motor vehicle". (Policy, Docket No. 1-1 at pp. 113-114 of 132; JA 122-123) (emphasis added). The use of the word "if" reflects an option for the insured instead of a mandate. The policy does not state that it requires an insured to file a lawsuit to initiate or preserve the right to arbitration. This section of the ARBITRATION provision forces an insured to pick a horse to ride to the finish line, either through arbitration or litigation. Nor does the policy give the insured the right to switch horses and opt for litigation over arbitration once arbitration has been requested by the insured. The general theme in this section of the ARBITRATION provision seems to be that if an insured files a lawsuit and wants to arbitrate, the right to arbitration will be quickly waived for an uninsured motorist claim if the insured does not trigger the arbitration option within 30 days. In fact, if anything, it seems to tacitly send the message that its insured <u>not</u> file a lawsuit if it intends to arbitrate.

The ARBITRATION provision further sets forth the procedure to be followed for the arbitration. This is described in seven numbered paragraphs listing the procedures to be used. The list is reduced to six paragraphs by deletion of

subparagraph 5.  (Policy, Docket No. 1-1 at p. 96 of 132; JA 104, as amended by

Policy Endorsement, Docket No. 1-1 at p. 114 of 132; JA 122).  It is interesting to

note that the deleted paragraph 5 had provided:

> 5.    Any arbitration action against the company must begin within the time limit allowed for bodily injury or death actions in the state where the accident occurred.

(Policy, Docket No. 1-1 at p. 96 of 132).[3]

The portion of the ARBITRATION provision listing six paragraphs of

procedures (as amended by endorsement), similarly does not support that a lawsuit

must be filed in order to trigger a right to arbitrate.  (Policy, Docket No. 1-1 at p. 96

of 132; JA 104).  Subparagraph 2 of the ARBITRATION procedures states as

follows:

> 2.    If the third arbitrator is not selected within 30 days, the **insured** or we may request a judge of a court of record to name one.  The court must be in the county and state in which arbitration is pending.

That provision seems to envision that there need not be a pending lawsuit when the

two arbitrators are unable to agree on the selection of a third arbitrator and need to

figure out how to break the log jam of their disagreement.  It describes the process

for seeking a judge to appoint the third arbitrator, and does not envision that a lawsuit

be pending at that time.

---

[3] *See* discussion *infra* at p. 36, fn.11 as to the deletion of former paragraph 5 after it was construed by the North Carolina Supreme Court in *White v. Register*.

Further, subparagraph 6 indicates, "[j]udgment upon award may be entered in any proper court." (Policy, Docket No. 1-1 at p. 96 of 132; JA 104). Once again, this seems to envision that there need not be a court already selected and involved with the arbitration prior to an arbitration award being rendered.[4]

### E.    Both North Carolina and Federal Public Policy Relating to Arbitration Support Arbitration of Siarris' UM Claim Pursuant to this Auto Policy

Both North Carolina and Federal public policy favor enforcement of arbitration agreements. The North Carolina courts have repeatedly affirmed the strong public policy in favor of the liberal construction of arbitration clauses and

---

[4] The North Carolina Revised Uniform Arbitration Act, N.C. Gen. Stat. § 1-569.1, *et seq.*, defines a "Court" to mean "a court of competent jurisdiction in this State." N.C. Gen. Stat. § 1-569.1(3). N.C. Gen. Stat. § 1-569.7(e) provides that "if a proceeding involving a claim referable to arbitration under an alleged agreement to arbitrate is pending in a court, a motion under this section shall be made to that court. Otherwise, a motion under this section may be made in any court as provided in G.S. 1-569.27." (Emphasis added). N.C. Gen. Stat. § 1-569.27 provides that "A motion pursuant to G.S. 1-569.5 shall be made in the court of the county in which the agreement to arbitrate specifies the arbitration hearing is to be held or, if the hearing has been held, in the court of the county in which it was held. Otherwise, the motion may be made in the court of any county in which an adverse party resides or has a place of business or, if no adverse party has a residence or place of business in this State, in the court of any county in this State. (emphasis added). All subsequent motions shall be made in the court hearing the initial motion unless the court otherwise directs." In turn, N.C. Gen. Stat. § 1-569.5(b) provides that, "Unless a civil action involving the agreement to arbitrate is pending, notice of an initial motion to the court under this Article shall be served in the manner provided by law for the service of a summons in a civil action. Otherwise, notice of the motion shall be given in the manner prescribed by law or rule of court for serving motions in pending cases." These statutory provisions each seem to envision that a prior action is not a mandatory requirement in order to trigger a North Carolina arbitration.

23

the resolution of disputes by way of arbitration. *See*, *e.g.*, *Nucor Corp. v. General Bearing Corp.*, 333 N.C. 148, 154, 423 S.E.2d 747, 750 (1992) (public policy favors arbitration because it represents "an expedited, efficient, relatively uncomplicated, alternative means of dispute resolution, with limited judicial intervention or participation, and without the primary expense of litigation – attorneys' fees"); *Cyclone Roofing Company, Inc. v. David N. LaFave Co., Inc.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984) ("Because of the strong public policy of North Carolina favoring arbitration…courts must closely scrutinize any allegation of waiver of such a favored right."); *Elliott v. KB Home North Carolina, Inc.*, 752 S.E.2d 694, 697 (2013), *disc. review denied*, 367 N.C. 512, 759 S.E.2d 98 (2014), *cert. denied*, 135 S. Ct. 494 (2014); *Carteret County v. United Contractors of Kinston, Inc.*, 120 N.C. App. 336, 342-343, 462 S.E.2d 816, 821 (1995) ("North Carolina has a strong public policy in favor of arbitration, and any allegation of waiver of such favored right will be closely scrutinized…[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."); *Rodgers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 24, 331 S.E.2d 726, 731 (1985) ("Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration…. This is so because public policy in this state, like federal policy,

favors arbitration."). *O'Neal Construction, Inc. v. Leonard S. Gibbs Grading, Inc.*, 121 N.C. App. 577, 580, 468 S.E.2d 248, 250 (1996) (quoting *Cyclone Roofing Co.*, *supra*); *Smith v. Young Moving & Storage, Inc.* 141 N.C. App. 469, 470-471, 540 S.E.2d 383, 385 (2000), *aff'd per curiam*, 353 N.C. 521, 546 S.E.2d 87 (2001) (same).

Therefore, in construing an arbitration clause to determine whether a certain issue is appropriate for arbitration, the issue should be resolved in a manner which favors arbitration. *See*, *Cyclone Roofing Co. v. David N. LaFave Co., Inc.*, 312 N.C. 224, 229, 321 S.E.2d 872, 876 (1984) (quoting *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Smith v. Young Moving & Storage, Inc.*, 141 N.C. App. 469, 470-471, 540 S.E.2d 383, 385 (2000), *aff'd per curiam*, 353 N.C. 521, 546 S.E.2d 87 (2001).

The North Carolina courts have indicated that because the federal and the state policy for North Carolina are the same in this regard, it is appropriate for the North Carolina courts to look to federal cases for guidance in determining whether a contractual party's claims fall within the scope of the arbitration clause. *See*, *Rogers Builders, Inc. v. McQueen*, 76 N.C. App. 16, 24, 331 S.E.2d 726, 731 (1985) ("Because federal policy and the policy of this State are the same in this regard, it is appropriate to look to federal cases for guidance in

determining whether plaintiff's claims fall within the scope of the arbitration clause."). [5]

The U.S. Supreme Court has observed that the courts "must look at the language in the agreement, *viz.*, the arbitration clause, and ascertain whether the claims fall within its scope and in so doing, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hospital v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). The Court noted "The Arbitration Act establishes that as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id. See also*, *Volt*

---

[5] Pursuant to 9 U.S.C.A. § 2, the scope of jurisdiction for agreements to arbitrate under The Federal Arbitration Act includes "a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…." This provision has been specifically applied to insurance contracts between parties to the contract. *See*, *e.g.*, *Masco Corp. v. Zurich American Insurance Company*, 382 F.3d 624 (6th Cir. 2004) (commercial auto policy UM claim); *Newmont U.S.A. Ltd. v. Insurance Company of North America*, 615 F.3d 1268 (10th Cir. 2010) (reinsurance agreement); *Prescott Architects, Inc. v. Lexington Insurance Company*, 638 F. Supp. 2d 1317 (N.D. Fla. 2009) (professional liability insurance coverage); *Sins v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311 (S.D. Fla. 2004) (health insurance policy); *Government Emp. Ins. Co. v. Keystone Insurance Company*, 408 F. Supp. 1185 (E.D. Pa. 1975) (uninsured motorist coverage). Whether case law relating to the Federal Arbitration Act is binding in this instance, since Unitrin has availed itself of federal diversity jurisdiction, or whether it is merely informative to the legal issues, Siarris contends that either way it supports her position.

*Information Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. University*, 489 U.S. 468, 475-476 (1989) ("[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [Federal Arbitration] Act…due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration"); *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 451-452 (4th Cir. 1997) ("[Federal Arbitration Act] 'Section 2 has been found by the Supreme Court to manifest Congress' 'liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'") (providing an excellent historical survey of enforcement of arbitration provisions in the federal courts).

A consistent stated purpose of arbitration is to "avoid litigation". *See, e.g.*, *Carolina Virginia Fashion Exhibitors, Inc. v. Gunter*, 41 N.C. App. 407, 410, 255 S.E.2d 414, 417 (1979) ("The purpose of arbitration is to settle matters in controversy and avoid litigation."); *Thomas v. Howard*, 51 N.C. App. 350, 352, 276 S.E.2d 743, 745 (1981) ("[t]he purpose of arbitration is to reach a final settlement of disputed matters without litigation"); *McNeal v. Black*, 61 N.C. App. 305, 308, 300 S.E.2d 575-577 (1983) (same); *J.M. Owen Building*

27

*Contractors v. College Walk Ltd.*, 101 N.C. App. 483, 487, 400 S.E.2d 468, 470 (1991) (same).[6]

## F.    The North Carolina Statute of Limitation for Triggering Arbitration

In *Adams v. Nelson*, 313 N.C. 442, 447-448, 329 S.E.2d 322, 325 (1985), the North Carolina Supreme Court, noting that there was no separate statutory provision in the North Carolina Uniform Arbitration Act relating to a statute of limitation for filing for arbitration[7], looked to the arbitration agreement for a provision setting forth such a limitation by contract.    *Id.* at 448, 329 S.E.2d at 326 n.5.    In *Adams*, the arbitration agreement had a specific provision stating that a demand for arbitration

---

[6] A number of unpublished opinions from the Federal North Carolina trial courts have noted the same purpose for auto insurance arbitration provisions.  *See*, *Chew v. Progressive Universal Insurance Company*, 2010 WL 4338352, E.D.N.C. (October 25, 2010) ("Second, the policy explicitly provides that an insured party may request arbitration in the event of a disagreement as to the amount of damages owed, which is precisely what happened here.  Far from burdening plaintiff, the arbitration provision appears to allow plaintiff to choose arbitration as a less costly alternative to a tort suit against the uninsured motorist."); *Lemons v. Pennsylvania National Mutual Casualty Insurance Company*, 2011 WL 2565617, M.D.N.C. (June 28, 2011) ("Allowing insureds to file lawsuits for breach of contract whenever the parties disagree over the amount of an insurer's claim would vitiate the entire purpose of the arbitration clauses in insurance policies such as the one in this case. Indeed, the process of arbitration is intended to allow an impartial arbiter to determine the value of an insured's claim when the parties reasonably disagree over the value."); *Bendrick v. State Farm Mutual Automobile Insurance Company*, 2012 WL 1247158, W.D.N.C. (March 7, 2012) (quoting *Chew* and *Lemons* decisions).

[7] The subsequently enacted Revised Uniform Arbitration Act, N.C. Gen. Stat. § 1-569.1, *et sequa*, (S.L. 2003-345 § 2 effective 01/01/04) similarly has no specific provision setting forth a separate statute of limitation for demanding arbitration.

cannot be made "after the date when such dispute would be barred by the applicable statute of limitations." *Id.* at 448, 329 S.E.2d at 325. Because that arbitration agreement provided for the arbitration of a contractual right, the Court applied the three-year statute of limitations provided for in N.C. Gen. Stat. § 1-52 for contract actions. *Id.* at 448, 329 S.E.2d at 325-326.

In the instant case, there is no stated time set forth in the ARBITRATION provision in the Unitrin policy, setting forth a deadline for triggering arbitration. Interestingly enough, the Unitrin policy had a provision that stated:

> 5.    Any arbitration action[8] against the Company must begin within the time limit allowed for bodily injury or death actions in the state where the accident occurred.

(Policy, Docket No. 1-1 at p. 96 of 132; JA 104). However, this provision was deleted from the policy by endorsement. (Policy, Docket No. 1-1 at p. 115 of 132; JA 123). The provision was construed in the unpublished North Carolina decision, *Carter v. Cook*, 158 N.C. App. 743, 582 S.E.2d 82 (2003) (unpublished disposition). There, the Court held that the insured had three years from the date of the accident to request arbitration. The insured did not request arbitration within three years of the accident, and was deemed to have failed to request it before the statute of limitations ran.

---

[8] The term "arbitration action" in former paragraph 5 was not separately defined in the policy. The North Carolina Revised Uniform Arbitration Act repeatedly refers to the arbitration process as a "proceeding". *See*, *e.g.*, N.C. Gen. Stat. §§ 1-569.6, 1-569.9, and 1-569.10.

In *Cameron v. Griffith*, 91 N.C. App. 164, 370 S.E.2d 704 (1988), the Court addressed an arbitration provision contained in a stock purchase agreement. There, unlike in *Adams v. Nelsen*, there was no provision specifically setting forth the time limitation for demanding arbitration, and the Court took the expansive view that in the absence of a specific provision in the agreement setting forth a cutoff date for demanding arbitration, the parties who had freely entered into the contract, including its arbitration option, could ask for arbitration even after the presumed statute of limitation for the underlying dispute would otherwise have run. *Id.* at 165, 370 S.E.2d 704-705.

Siarris could make a similar argument in the instant case, since Unitrin completely removed its timing provision for requesting arbitration from the policy without replacing it with another provision. (See discussion *supra* at p. 22). However, this would lead to the unreasonable result of allowing an insured to pursue by way of the arbitration process in an untimely fashion, claims that would otherwise be barred if instead filed at the same moment through a lawsuit. Siarris should be permitted to opt for <u>either</u> a timely request for arbitration <u>or</u> the timely filing of a lawsuit to trigger her rights, but she should not have to do both. Nowhere in the Unitrin policy does it say she must file a lawsuit to preserve her prior triggered right to arbitrate in a binding fashion. She should have no more and no less time to opt for arbitration than by instead resolving the dispute with a lawsuit.

The protection afforded to Unitrin as to timing in the reading of this policy is that the insured, in this case Siarris, must trigger her right to arbitrate before the underlying tort statute of limitations has run.  The policy states she is entitled to arbitrate:  "Whether that **insured** is legally entitled to recover compensatory damages from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**…."  (Policy, Docket No. 1-1, at p. 96 of 132; JA 104). If the arbitration claim for bodily injury due to a tortfeasor's automobile-related negligence is not requested within three years from the date of the accident, the arbitrators can and should find that the statute of limitations has run, pursuant to N.C. Gen. Stat. § 1-52(16) [or two years for a North Carolina wrongful death claim, pursuant to N.C. Gen. Stat. § 1-54].  This fairly and reasonably comports with the line of North Carolina cases that find the right to recover uninsured or underinsured benefits is tied directly to the applicable underlying tort statute of limitation.  *See*, *e.g.*, *Eckard v. Smith*, 166 N.C. App. 312, 324, 603 S.E.2d 134, 142-143 (2004), *aff'd per curiam*, 360 N.C. 51, 619 S.E.2d 503 (2005) (must bring action for uninsured motorist benefits for wrongful death benefits within two-year statute of limitation for wrongful death); *Thomas v. Washington*, 136 N.C. App. 750, 754, 525 S.E.2d 839, 842 (2000) (must bring action within three-year statute of limitation for negligence causing bodily injury); *Sturdivant v. Andrews*, 161 N.C. App. 177, 179, 587 S.E.2d 510, 511 (2003), *disc. review denied*, 358 N.C. 242, 594 S.E.2d 34 (2004)

31

(two years for wrongful death).[9]  It also comports with the long line of North Carolina and federal cases encouraging arbitration as a matter of public policy, to avoid the costs and expenses of filing a lawsuit (See discussion *supra* at pp. 23-28).

In the absence of a stated time for demanding arbitration, courts in other jurisdictions have variously applied the statute of limitation for the activity giving rise to the claim to be arbitrated, and the statute of limitation for the breach of a contract.  *See generally*, Joel D. Smith, Annotation, Statutes of Limitations as Bar to Arbitration Under Agreement, 94 A.L.R.3d 533 (1979).  Under North Carolina law, both a breach of contract claim and a claim for ordinary negligence resulting in bodily injury are each governed by a three-year statute of limitation.  See, N.C. Gen. Stat. § 1-52(1) and (16), respectively.

Arbitration is particularly compelling when it is considered that this is a so-called "hit-and-run" claim.  The policy definition of an "uninsured motor vehicle" includes a "land motor vehicle":

*   *   *

3.      Which with respect to damages for bodily injury only, is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

*   *   *

b.      a vehicle which you or any family member are occupying; or

---

[9] It should be noted that in none of those cases was there presented any issue of a timely request to arbitrate.

32

(Policy, Docket No. 1-1 at p. 93 of 132; JA 101). A person seeking to arbitrate an uninsured motorist claim involving a tortfeasor who "cannot be identified" should not have to file a lawsuit and keep a summons open against a "John Doe" indefinitely to preserve the right of arbitration for uninsured motorist benefits, for an accident involving this definition of an uninsured motor vehicle.[10]

## G.    The North Carolina Cases Construing UM and UIM Arbitration Provisions Support Arbitration in this Instance

There are several North Carolina cases that have looked at the scope of automobile policy arbitration provisions. In *Wright v. Fidelity & Cas. Co. of New York*, 270 N.C. 577, 155 S.E.2d 100 (1967), the North Carolina Supreme Court, in a case quite similar to this case, addressed whether a provision for uninsured motorist coverage required the filing of a lawsuit in order to maintain the right to obtain benefits pursuant to the policy. The uninsured motorist arbitration provision in that case provided:

> For the purpose of this endorsement, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree and the insured so demands, by arbitration; but if the insured elects not to arbitrate, the liability of the company shall be

---

[10] There are strict requirements for the notice of a hit-and-run accident to be given by the insured. First, for such an accident, the insured must "[p]romptly notify the police if a hit-and-run driver is involved." (Policy, Docket No. 1-1 at p. 101 of 132; JA 109). Second, the insurer "must be notified promptly of how, when and where the accident or loss happened." (Policy, Docket No. 1-1 at p. 101 of 132; JA 109). There is no allegation by Unitrin of a breach of either of these duties in this case.

> determined only in an action against the company.    *** In this
> endorsement provision is made that 'In any action against the company,
> the company May require the insured to join such person or
> organization as a party defendant.' (Emphasis ours.)

*Id.* at 583, 155 S.E.2d at 105.  The court there noted that "the provision in the
endorsement gives the insured the option to demand arbitration." *Id.* at 584, 155
S.E.2d at 105.  The court went on to state: "[w]e hold that the institution of an action
by plaintiff against [the alleged tortfeasors] either or both, is not a condition
precedent to [the UM insurer's] liability under the uninsured motorist coverage in
[the UM insurer's] policy, if there was such coverage." *Id.* at 587, 155 S.E.2d at 107
(citations omitted).  In reaching this conclusion, the court noted that "if there were
ambiguity in the policy which requires interpretation as to whether the policy
provisions impose liability, the provisions would be construed in favor of coverage
and against the company." *Id.* at 587, 155 S.E.2d at 107 (citing *Williams v.
Nationwide Mutual Insurance Company*, 269 N.C. 235, 238, 152 S.E.2d 102, 105
(1967)).  This is the closest published decision to the issue presented herein, it is
from the North Carolina Supreme Court, and while it did not construe identical
policy language, it supports Siarris' position.

Several other cases have looked at automobile policy arbitration provisions,
and tacitly support Siarris' right to arbitrate in this case.  In *Register v. White*, 358
N.C. 691, 599 S.E.2d 549 (2004), the court applied the North Carolina rules of
construction as to insurance contracts, in deciding whether arbitration could be

triggered for an underinsured motorist claim more than three years from the date of an accident. There, the plaintiff insured filed an action for recovery against an alleged underinsured tortfeasor. The alleged tortfeasor's liability insurer finally tendered its limits more than three years after the date of the automobile accident, triggering the right to proceed against the plaintiff's insurer for contractual UIM benefits pursuant to the policy. At that point, after the tortfeasor's insurer made its tender, the insured demanded arbitration. The UIM insurer alleged that arbitration was time barred because the request for arbitration had first occurred more than three years after the date of the accident. The arbitration provision in that case, pertaining to underinsured motorist coverage, provided in pertinent part:

> If we and an **insured** do not agree:
>
> 1.     Whether that **insured** is legally entitled to recover compensatory damages from the owner or driver of an…**underinsured motor vehicle**; or
>
> 2.     As to the amount of such damages; the **insured** may demand to settle the dispute by arbitration.
>
> The following procedures will be used:
>
> 5.     Any arbitration action against the company must begin within the time limit allowed for **bodily injury** or death actions in the state where the accident occurred.

*Id.* at 694, 599 S.E.2d at 552. The court noted that North Carolina's Uniform Arbitration Act was in effect at the time the parties entered into the automobile contract and that it provided that "two or more parties may include in a written

contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract." *Id.* at 696, 599 S.E.2d at 553 (quoting in part N.C. Gen. Stat. § 1-567.2 (Supp. 1998)) (subsequently repealed in 2003 when replaced by the Revised Uniform Arbitration Act, which is effective for agreements to arbitrate "made on or after January 1, 2004". *See*, N.C. Gen. Stat. § 1-569.3). The Court found that the arbitration language in the policy was ambiguous and held that the right to opt for arbitration of a UIM claim could not fairly be triggered until the liability carrier tendered its limits as to the underinsured tortfeasor. *Id.* The Court found that the so-called paragraph 5 provision should not be construed to bar a right to trigger arbitration if the underlying liability insurer waited until more than three years after the date of the accident to first tender its limits. [11] *Id.*

More recently, in *Capps v. Virrey*, 184 N.C. App. 267, 645 S.E.2d 825 (2007), the North Carolina Court of Appeals emphasized the differences between arbitration and litigation in the context of an uninsured motorist claim, and that an election

---

[11] This is the same subparagraph 5 that is deleted by endorsement from the Unitrin policy in this case. The revision to the policy by way of an endorsement removing that provision may well have been prompted by the ruling by the North Carolina Supreme Court in *Register v. White*, which rejected an ironclad three-year limitation as to requesting arbitration of underinsured motorist claims, where the tortfeasor's insurer might wait more than three years to tender. (Policy, Docket No. 1-1 at p. 96 of 132; JA 104 -- deleted by Endorsement at Policy, Docket No. 1-1 at p. 114 of 132; JA 122). For whatever reason, perhaps just a case of throwing out the baby with the bath water, Unitrin did not substitute a new arbitration timing paragraph for the deleted subparagraph 5.

36

should be made using either arbitration or litigation, but an insured should not be permitted extensive use of litigation for discovery purposes and then be permitted to switch to arbitration. In that case, the court held that an insured could not file an action to recover on an uninsured motorist claim, including service of discovery with a complaint, followed up by additional discovery over the next year and a half, and then decide to change horses and opt to compel arbitration. *Id.* at 273-274, 645 S.E.2d at 829. The court noted that the entire purpose of arbitration was to avoid litigation and its associated costs, and that the uninsured motorist insurer had been prejudiced by going down the litigation road for a year and a half, with the plaintiff accessing things not available in an arbitration, and then finally deciding to switch to arbitration. The court reasoned:

> Arbitration is a process to privately adjudicate a final and binding settlement of disputed matters quickly and efficiently, without the costs and delays inherent in litigation. *WMS, Inc. v. Weaver*, 166 N.C. App. 352, 602 S.E.2d 706, *disc. review denied*, 359 N.C. 197, 608 S.E.2d 330 (2004). Parties agree to arbitrate in order to avoid the costs and delays associated with litigation, specifically the costs and delays inherently incurred in civil discovery. Applying the Rules of Civil Procedure and Evidence to arbitration negates the very purpose for agreeing to arbitrate. The procedural and evidentiary rules governing judicial proceedings do not apply to arbitrations absent plain and unambiguous language in the arbitration agreement that those rules apply. *Crutchley v. Crutchley*, 306 N.C. 518, 293 S.E.2d 793 (1982); *Pinnacle Group, Inc. v. Shrader*, 105 N.C. App. 168, 412 S.E.2d 117 (1992). It is clear that Plaintiff's discovery requests exceeded the scope allowed by the Uniform Arbitration Act. Plaintiff thereby waived his right to compel arbitration.

*Id.* at 272-73, 645 S.E.2d at 829.  In the instant case, Siarris did make a timely election to arbitrate, and should be allowed to proceed in this fashion for the beneficial reasons inherent in the arbitration process stated in *Capps v. Virrey*.  She should not also have to file a lawsuit to preserve this right when she has timely triggered arbitration.  There is no such additional pre-condition or requirement in the policy mandating this additional activity after she has already timely triggered arbitration.

The very two issues that are subject to arbitration ("whether the insured is legally entitled to recover compensatory damages from the owner or driver of an uninsured motor vehicle" and "the amount of such damages" – JA 122) are the triggering requirements to trigger coverage pursuant to the insuring agreement – wherein Unitrin "will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of:  1. Bodily injury sustained by an insured and caused by an accident...." – JA 100).[12]

---

[12] If either party seeks to challenge the arbitration award process, or to enter a judgment on the arbitration award, or seek other rights or remedies relating to the arbitration, all such relief is provided for after the arbitration award is made, pursuant to the Revised Uniform Arbitration Act, N.C. Gen. Stat. § 1-569.1, *et sequa.*

## CONCLUSION

Under both the policy language and North Carolina law interpreting such language, Siarris had the option of either invoking arbitration or filing a lawsuit for the purpose of resolving her uninsured motorist claim against Unitrin. Siarris timely opted for arbitration. She properly effectuated this choice within the tort statute of limitation. She designated her arbitrator. The ball passed to Unitrin. Unitrin should designate its arbitrator, and this matter should proceed pursuant to the arbitration process set forth by Unitrin in its policy. Siarris respectfully prays the Court for a reversal of the Opinion of the Trial Court, filed on February 3, 2015 (Docket No. 20; JA 170), and for a declaration that Policy No. RC 981128 permits Siarris to participate in timely binding arbitration of the following issues to determine her right to recover uninsured motorist benefits pursuant to the insuring agreement for the auto accident of October 4, 2010, pursuant to the ARBITRATION provision in her policy:

1.    Whether that **insured** is legally entitled to recover compensatory damages from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle**;

2.    As to the amount of such compensatory damages.

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Rule 34(a)(1) of the Federal Rules of Appellate Procedure, Siarris requests oral argument because this appeal is not frivolous, pursuant to Rule 34(a)(2)(A), the dispositive issue has not been authoritatively settled pursuant to Rule 34(a)(2)(B), and it is believed by Siarris that the decisional process would be aided by oral argument pursuant to Rule 34(a)(2)(C).

Respectfully submitted, this the 13th day of April, 2015.

BY:   /s/ Theodore B. Smyth
       Theodore B. Smyth
       *Attorneys for Defendant*
       NC State Bar No. 10045
       CRANFILL SUMNER & HARTZOG LLP
       Post Office Box 27808
       Raleigh, North Carolina 27611-7808
       Telephone:  (919) 828-5100
       Facsimile:  (919) 828-2277
       E-mail:     tsmyth@cshlaw.com

## <u>UNITED STATES COURT OF APPEALS</u>
## <u>FOR THE FOURTH CIRCUIT</u>

### <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains <u>10,422</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

Dated:  April 13, 2015             <u>/s/ Theodore B. Smyth</u>
                                   Theodore B. Smyth

                                   *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on April 13, 2015, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

> Jeffrey B. Kuykendal
> MCANGUS, GOUDELOCK
> & COURIE, LLC
> 6302 Fairview Road
> P.O. Box 30307
> Charlotte, NC 28230
> (704) 405-4575
>
> *Counsel for Appellee*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

> /s/ Karen R. Taylor
> Karen R. Taylor
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street, Suite 230
> Richmond, VA 23219